THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JAMES EDWARD WHITLEY (a/k/a | ) | |
| "Ed Whitley"), | ) | Case No. 10-10426 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| ————————————————— | ) | |
| | ) | |
| CHARLES M. IVEY, III, | ) | |
| Chapter 7 Trustee for the Estate of | ) | Adversary Proceeding No. 11-02039 |
| JAMES EDWARD WHITLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT SWOFFORD, | ) | |
| | ) | |
| Defendant. | ) | |
| ————————————————— | ) | |

## MEMORANDUM OPINION

This adversary proceeding came before the court on Defendant's motion pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's complaint for failure to state a claim for relief, and for failure to plead claims with sufficient particularity as required by Rule 7008 of the Federal Rules of Bankruptcy Procedure and Rule 8 of the Federal Rules of Civil Procedure. Sarah F. Sparrow and Jeffery S. Southerland represent Defendant and Edwin R. Gatton represents Plaintiff.

## FACTS

James Edward Whitley (the "Debtor") was the sole shareholder and principal officer of South Wynd Financial, Inc., a corporation purportedly in the business of invoice funding and receivables

financing ("factoring"). In reality, Debtor's factoring business was non-existent and fictitious.[1] On March 8, 2010, a group of unsecured creditors filed an involuntary petition against Debtor. Charles M. Ivy, III (the "Plaintiff") was appointed as Trustee and subsequently commenced multiple adversary proceedings against the investors in Debtor's investment-scheme. Robert Swofford (the "Defendant") was an investor in Debtor's scheme and received at least $969,653.68 in transfers from Debtor from March 17, 2006 to July 21, 2009. Plaintiff seeks, under 11 U.S.C. § 548 and the North Carolina Uniform Fraudulent Transfer Act, to recover from Defendant money transferred to him by Debtor.

The first cause of action seeks to avoid the transfers pursuant to section 548(a)(1)(A). The second cause of action seeks to avoid the transfers pursuant to section 548(a)(1)(B). Plaintiff relies on the North Carolina Uniform Fraudulent Transfer Act as an alternative theory of recovery on both counts. Lastly, Plaintiff seeks to disallow or reduce Defendant's Proof of Claim (hereinafter, the "Objection"). Defendant has moved under Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6) to dismiss Plaintiff's complaint.

MATTER BEFORE THE COURT

Defendant's motion seeks dismissal of Plaintiff's complaint under Federal Rules 8, 9(b), and 12(b)(6). For the reasons that follow, the court has concluded that Defendant's motion should be denied.

STANDARD

Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, Rule 12(b)-(h) of the Federal Rules of Civil Procedure applies in adversary proceedings in the Bankruptcy Court. In

---

[1] In May 2011, Whitley pled guilty to wire fraud and money laundering charges.

order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A motion to dismiss should be considered using a two-pronged approach. Iqbal, 129 S.Ct. at 1950. First, a court must accept as true all factual allegations contained in a complaint. Id. at 1949. Once a court assumes the truth of well-pleaded factual allegations, it should "then determine whether they plausibly give rise to an entitlement to relief." Id. In order for a claim to be facially plausible, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949 (citing Twombly, 550 U.S. at 556). Whether a complaint states a plausible claim for relief will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." However, Rule 9 "does not contradict the theory of notice pleading embraced by the Federal Rules in general, and Rule 8, in particular." Gilbert v. Bagley, 492 F.Supp. 714, 725 (M.D.N.C. 1980). In keeping with that premise, the Fourth Circuit has held that courts "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [the defendant] will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999); accord Fulk v. Bagley, 88 F.R.D. 153, 164 (M.D.N.C. 1980).

Applying the foregoing standards in the present case, the Court concludes that the motion should be denied.

## DISCUSSION

1.    Motion to dismiss Count I under Fed. R. Civ. Pro. 8 and 12(b)(6) is denied

Count I of the complaint seeks avoidance and recovery of prepetition transfers to Defendant under both 11 U.S.C. § 548(a)(1)(A) and § 39-23.4(a)(1) of the North Carolina Fraudulent Transfer Act, made applicable to this case by section 544 of the Bankruptcy Code. Under section 548(a)(1)(A), a trustee may avoid any transfer of an interest of the debtor in property made within two years of the filing of the petition if the debtor made such transfer with actual intent to hinder, delay, or defraud creditors. 11 U.S.C. § 548(a)(1)(A). This provision requires proof of actual intent to defraud. Similarly, the North Carolina Fraudulent Transfer Act, together with section 544(b) of the Bankruptcy Code, permits the trustee to avoid a transfer made "with the intent to hinder, delay, or defraud any creditor of the debtor" within the four-year period specified in N.C. Gen. Stat. § 39–23.9. Therefore, a trustee in bankruptcy, pursuant to section 544 of the Code, has the authority to attack fraudulent transfers under section 39–23.4(a) that occurred up to four years prior to the the commencement of the trustee's action.

In order to state a claim for relief under section 548(a)(1)(A), Plaintiff must show that Defendant received a transfer of an interest of the Debtor. Defendant alleges that Count I fails to establish that Debtor "transferred an interest of the debtor in property" to Defendant. Defendant contends that because the complaint alleges that the transfers were "funded through funds obtained from additional investors," the funds necessarily were not an interest of Debtor in property. Mem. of Law in Supp. of Def.'s Mtn to Dismiss, 10-11. Movant's argument is without merit: transfers

made by the operator of a Ponzi scheme may be recovered under section 548(a)(1), despite the fact that the funds, in reality, "belonged" to investors. In <u>Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.)</u>, 163 B.R. 841 (Bankr. D. Colo. 1994), <u>subsequently aff'd</u>, 84 F.3d 1286 (10th Cir. 1996), the debtor made transfers from his personal checking account to investors. The court held that these transfers constituted transfers of an interest of the debtor in property, notwithstanding the fact that the funds were initially fraudulently procured from investors. <u>Hedged-Invs.</u>, 163 B.R. at 850. In the absence of an agreement between the parties that the funds were to be held in trust or other such proof that the funds were held in trust, the funds were property of the debtor. <u>Id.</u> at 850-51; <u>see also In re AppOnline.com, Inc.</u>, 315 B.R. 259 (Bankr. E.D.N.Y. 2004). The Tenth Circuit held in <u>Bailey v. Big Sky Motors, Ltd. (In re Ogden)</u>, 314 F.3d 1190, 1198 (10th Cir. 2002), that a Chapter 7 debtor, in his capacity as operator of Ponzi scheme, had at least defeasible title in funds that he fraudulently acquired from subsequent investors for the purpose of making payment to earlier ones. Accordingly, the operator's payment on account of this prior investor was one involving "interest of the debtor in property," within the meaning of the preference provision. <u>Ogden</u>, 314 F.3d at 1198. Despite the brevity of facts alleged in the complaint regarding Debtor's transfers to Defendant, the allegations are sufficient to withstand dismissal: Plaintiff's assertion that Debtor transferred funds from his personal bank account to Defendant is sufficient to satisfy the first element of section 548(a)(1)(A).

Plaintiff must further show that the transfers were made on or within two years before the date of the filing of the petition, or alternatively under section 39–23.4(a), that the action was brought within four years from the date of the transfer or, if later, within one year after the transfer could reasonably have been discovered. N.C. Gen. Stat. § 39–23.9. The complaint details the dates

and amounts of various transfers made by Debtor to Defendant.  Each of these transfers occurred

within the Code's two-year period or within the four-year look back period under N.C. Gen. Stat.

§ 39-23.9.  The trustee has therefore sufficiently pled the second element of a claim for a transfer

made with actual intent to hinder, delay or defraud creditors.

Plaintiff's allegations also state a claim under both the Bankruptcy Code and North Carolina

law that Debtor made the challenged transfers with actual intent to defraud. The complaint sets out

facts intended to support the existence of a Ponzi scheme. A majority of federal courts have held that

proof of operation of a Ponzi scheme is sufficient to establish actual intent to hinder, delay, or

defraud creditors so as to permit avoidance as a fraudulent transfer under section 548(a)(1)(A).[2]

Transfers in furtherance of a Ponzi scheme "have achieved a special status in fraudulent transfer law"

from which intent of actual fraud may be inferred. In re Cohen, 199 B.R. 709, 717 (B.A.P. 9th Cir.

1996). A Ponzi scheme is defined as:

> [a] fraudulent investment scheme in which money contributed by later investors
> generates artificially high dividends for the original investors, whose example attracts
> even larger investments. Money from the new investors is used directly to repay or
> pay interest to earlier investors, [usually] without any operation or revenue-producing
> activity other than the continual raising of new funds.

BLACK'S LAW DICTIONARY (8th ed. 2004). By its very nature, a Ponzi scheme will eventually

collapse. Perpetrators therefore know that the investors at the end of the line will lose their

---

[2]  See, e.g., In re Grafton Partners, 321 B.R. 527. 532 (B.A.P. 9th Cir. 2005); Hayes v. Palm
Seedlings Partners–A (In re Agric. Research & Tech. Grp., Inc.), 916 F.2d 528, 536 (9th Cir. 1990);
Emerson v. Maples (In re Mark Benskin Co., Inc.), 1995 WL 381741, at *5 (6th Cir. 1995); Christian
Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC), 439 B.R.
284, 305 (S.D.N.Y. 2010), In re Bernard L. Madoff Inv. Secs. LLC, 445 B.R. 206, 220-21 (Bankr.
S.D.N.Y. 2011); In re Taneja, 453 B.R. 618, 621 (Bankr. E.D. Va. 2011); Liebersohn v. Campus
Crusade for Christ, Inc. ( In re C.F. Foods, L.P.), 280 B.R. 103, 110 (Bankr. D. Pa. 2002); Jobin v.
Ripley  (In re M & L Bus. Mach. Co., Inc.), 198 B.R. 800, 806-07 (D. Colo. 1996).

investment. <u>Martino v. Edison Worldwide Capital (In re Randy)</u>, 189 B.R. 425, 438 (N.D. Ill. 1995) (citation omitted). "Knowledge to a substantial certainty constitutes intent in the eyes of the law." <u>Cf.</u> RESTATEMENT (SECOND) OF TORTS, SEC. 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." <u>Merrill v. Abbott (In re Indep. Clearing House Co.)</u>, 77 B.R. 843, 860 (D. Utah 1987).

This court finds that the "Ponzi scheme presumption" similarly arises in fraudulent transfer actions brought under section 39-23.4(a)(1) of the North Carolina Fraudulent Transfer Act. This issue is a matter of first impression in North Carolina. The Court will look to the interpretation of the Uniform Fraudulent Transfer Act in other jurisdictions, since the North Carolina statute is to be "applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Article among states enacting it." N.C. Gen. Stat. § 39-23.11. <u>See also</u> <u>Terry v. June</u>, 432 F. Supp. 2d 635, 639 (W.D. Va. 2006) (employing similar statutory analysis). Consistent with federal case law, courts with fraudulent transfer statutes similar to North Carolina's have held that the presumption of actual fraud applies in fraudulent transfer actions brought against perpetrators of Ponzi schemes. <u>See, e.g.</u>, <u>In re AFI Holdings</u>, 525 F.3d 700, 704 (9th Cir. 2008) ("the mere existence of a Ponzi scheme' is sufficient to establish actual intent under section 548(a)(1) or a state's equivalent to that section.") (quoting <u>Hayes v. Palm</u>, 916 F.2d at 535); <u>In re Mortg. Store, Inc.</u>, Slip Copy, 2011 WL 3878355, at *2 (Bankr. D. Hawai'I Sept. 1, 2011) ("Evidence that the Debtor operated a Ponzi scheme proves fraudulent intent . . . The transfer is fraudulent under 11 U.S.C. § 548(a)(1) and Haw.Rev.Stat. § 651C–4(a)."); <u>In re Dreier LLP</u>, 452 B.R. 391, 435 (Bankr. S.D.N.Y. 2011) ("Applying the Ponzi scheme presumption, the Complaint here sufficiently pleads the transferor's actual fraudulent intent. Therefore, the motion to dismiss Count III—actual

fraudulent conveyance under NYDCL § 276—is denied.").

The Court's decision to apply a presumption of actual fraud under the North Carolina Fraudulent Transfer act is further supported by federal case law. The Ninth Circuit has reasoned that where a state statute is similar to the Bankruptcy Code, cases analyzing the Bankruptcy Code provisions are persuasive authority. AFI Holdings, 525 F.3d at 703. Indeed, several courts have looked to cases interpreting section 548 in order to give meaning to their state statutes. See, e.g., PHP Liquidating, LLC v. Robbins (In re PHP Healthcare Corp.), 128 Fed.Appx. 839, 847 (3d Cir. 2005) ("We need not discuss the [actual-intent fraudulent transfer] provisions of the Delaware Fraudulent Transfer Act ... because they are substantially the same as the relevant parts of the Bankruptcy Code."); ASARCO LLC v. Ams. Mining Corp., 396 B.R. 278, 365 (S.D. Tex. 2008) ("Thus, although ASARCO has not brought an action under section 548, the Court may look to cases interpreting actual-intent fraudulent transfer provisions of the Bankruptcy Code to predict the standard that would be applied. . .").  North Carolina's fraudulent transfer statute is similar in form and substance to the Bankruptcy Code's fraudulent transfer provisions. Compare 11 U.S.C. § 548(a)(1)(a) with N.C. Gen. Stat. § 39–23.4 (allowing a transfer to be avoided when the debtor acted with "actual intent to hinder, delay, or defraud" an entity or creditor). The substantial body of federal case law applying a presumption of actual fraud in section 548 fraudulent transfer actions arising from a Ponzi scheme is therefore persuasive authority. Consistent with this case law, the presumption should likewise arise under the North Carolina statute.

Plaintiff's allegations are sufficient to plausibly establish the existence of a Ponzi scheme and thereby trigger a presumption of actual fraud. As defined by the Fourth Circuit, a Ponzi scheme is "a phony investment plan in which monies paid by later investors are used to pay artificially high

returns to the initial investors." U.S. v. Godwin, 272 F.3d 659, 666 n.3 (4th Cir. 2001). To prove that

a Ponzi scheme exists, a plaintiff must prove that (1) deposits were made by investors, (2) debtor

conducted little or no legitimate business operations as represented to investors, (3) debtor's

purported business operation produced little or no profits or earnings, and (4) source of payments

to investors was cash infused by new investors. In re Norvergence, Inc., 405 B.R. 709, 733 (Bankr.

D. N.J. 2009); In re Pearlman, 440 B.R. 900, 904 (Bankr. M.D. Fla. 2010). Defendant contends that

Plaintiff gives no meaningful details of a Ponzi scheme. Specifically, Defendant claims that Plaintiff

fails to allege facts regarding the duration of the scheme, the amount involved, rates of return, when

Debtor became insolvent, and how much Debtor owed other parties at the time of his transfers to

defendant. None of this information is necessary in order for Plaintiff to establish the plausible

existence of a Ponzi Scheme. Plaintiff's allegations satisfy all four requirements for a Ponzi scheme:

(1) individuals transferred funds to Debtor for the purpose of investing in the factoring programs,

(2) Debtor was conducting very little or no actual commerce or legitimate commercial activities, but

represented that he was conducting legitimate business operations, (3) no actual profits or earnings

were produced in any material fashion from the operation of the fictitious factoring program, and

(4) to the extent that any alleged profits or returns were made on the investments, they were funded

through additional funds obtained from additional investors into the fictitious factoring program.

Taken together, these facts set out a plausible claim that Debtor's activities constituted a Ponzi

scheme. Plaintiff has therefore has successfully invoked the "Ponzi presumption" under which

payments made in furtherance of such a scheme are presumed to be fraudulent.

     Defendant further argues that Plaintiff's actual fraud claim should be dismissed because the

complaint fails to identify any *specific creditor* to whom Debtor was indebted or intended to defraud.

This level of specificity is not required in order for Plaintiff to withstand a 12(b)(6) action. The defendants in <u>In re James River Coal Co.</u>, 360 B.R. 139, 160 (Bankr. E.D. Va. 2007), argued that the trustee's fraudulent transfer action should be dismissed because the trustee had not identified a specific creditor that was injured by the alleged wrongful transfers. The court rejected the defendants' argument, holding that the absence of a specific named creditor was not fatal to the trustee's case:

> The amended complaint alleges that at all relevant times, the Debtors had creditors with claims that arose before or within a reasonable time after the challenged transactions. That alone should be sufficient. . . . [I]t would be promoting form over substance to dismiss any claim based upon the Trustee's failure to name one specific creditor that was harmed by the actions of the defendants. Considering the low threshold to be applied to motions to dismiss, dismissal is not appropriate to the case at this stage of the proceedings.

<u>James River Coal</u>, 360 B.R. at 160. Plaintiff alleges that Debtor was indebted to one or more creditors holding an unsecured claim at the time of the alleged transfers. This, in combination with the Ponzi scheme presumption, is sufficient to satisfy the heightened pleading standard under <u>Twombly</u> and <u>Iqbal</u>.

2.     Motion to dismiss Count I under Fed. R. Civ. Pro. 9 is denied

A claim for actual fraudulent transfer under the Bankruptcy Code must satisfy Rule 9(b), which requires that averments of fraud be pleaded with particularity. <u>Westinghouse Savannah River Co.</u>, 176 F.3d at 784. Plaintiff's claims for actual fraud under section 548(a)(1)(A) are sufficiently pled. To adequately plead a claim to recover actual fraudulent transfers under the Code, the Complaint must state with particularity the factual circumstances constituting fraud under Rule 9(b). See <u>In re Derivium Capital, LLC</u>, 380 B.R. 429, 439 (Bankr. D.S.C. 2006) (citing <u>In re Verestar, Inc.</u>, 343 B.R. 444, 459 (Bankr. S.D.N.Y. 2006)); <u>In re Caremerica</u>, 409 B.R. 737, 755. To do this,

the Complaint must allege (1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfer and (3) the consideration paid with respect thereto. In re Saba Enters., Inc., 421 B.R. 626, 640 (Bankr. S.D.N.Y. 2009). However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b). The Bankruptcy Court for the Eastern District of Virginia explained in James River Coal that the particularity requirements of Rule 9(b) are more relaxed in the case of a fraudulent transfer action. 360 B.R. at 163 n.15; see also In re Rave Commc'ns., Inc., 138 B.R. 390, 395–96 (Bankr. S.D.N.Y. 1992); In re Art & Co., 179 B.R. 757, 764–64 (Bankr. D.Mass. 1995).[3]

The Complaint adequately alleges Debtor-transferor's fraudulent intent for purposes of section 548(a)(1)(A) and N.C. Gen. Stat. § 39-23.4(a)(1). The Complaint includes particulars as to the identity of the transfers sought to be avoided, including the date, transferor, transferee, method of transfer, and amount of each alleged transfer. See Klein v. Capital One Fin. Corp., 2011 WL 3270438 (D. Idaho June 29, 2011) (finding that a complaint containing these details satisfied Rule 9(b)). Further, the Complaint alleges Debtor was operating a Ponzi scheme and provides specific facts related to the scheme. Accordingly, Debtor's fraudulent intent has been adequately pled for purposes of actual fraud under the Code and North Carolina law.

3.      Motion to dismiss Count II under Fed. R. Civ. Pro.12(b)(6) is denied

Plaintiff's second cause of action seeks avoidance of the transfers made by Debtor to Defendant pursuant to 11 U.S.C. § 548(a)(1)(B) and under N.C. Gen. Stat. § 39-23.4(a)(2).  In order

---

[3] Some courts have held that the requirement is relaxed even more when the plaintiff is a third party, such as a trustee, because a third party generally has less information on which to base its allegation. See Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC), 321 B.R. 128, 140 (Bankr. D. Del. 2005). Although the Court takes note of this rule, it does not rely on it in this opinion.

to avoid a transfer under these sections, a trustee must establish that (1) the debtor had an interest in the property transferred; (2) the interest was transferred within two years of the filing of the bankruptcy petition (or within four years under North Carolina law); (3) the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) the debtor received less than a reasonably equivalent value in exchange for such transfer. See In re Gutpelet, 137 F.3d 748, 751 (3d Cir. 1998); Pension Transfer Corp. v. Beneficiaries, 319 B.R. 76 (D. Del. 2005); In re Maine Poly, Inc., 317 B.R. 1 (Bankr. D. Me. 2004); In re Dunbar, 313 B.R. 430, 434 (Bankr. C.D. Ill. 2004).

The Complaint satisfies the first, second, and third elements of a constructive fraud claim. The Complaint describes transfers that took place either within two years, as required by the federal statute, or within four years, as required by North Carolina law. Plaintiff's allegations reflect that the assets transferred were an interest of Debtor. In order to prove the third element, insolvency, the complaint recites that Debtor was insolvent on the dates of the transfers. Plaintiff's allegation, although technically "a formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555, is nevertheless sufficient: by definition, Ponzi-style investment schemes are insolvent. Returns paid to investors are comprised of nothing more than the principal investments made by other investors. The United States Supreme Court emphasized this point in its description of the "original" Ponzi scheme:

> [Charles Ponzi] was always insolvent, and became daily more so, the more his business succeeded. He made no investments of any kind, so that all the money he had at any time was solely the result of loans by his dupes.

Cunningham v. Brown, 265 U.S. 1, 7–8 (1924). The complaint states that at the time Debtor made the transfers "debtor was insolvent." Obj. to Proof of Claim, 10. It states further that "Debtor was

engaged in a business or transaction for which the Debtor's respective remaining property constituted unreasonably small capital." Id. The complaint also provides that "debtor intended to incur and believed he would incur debts beyond its ability to pay as such debts matured." These allegations, together with the involvement of an alleged Ponzi scheme, are sufficient to establish that Debtor was insolvent at the time of the transfers to Defendant.

The fourth element of a claim under section 548(a)(1)(B) requires that Plaintiff show that the transferor received "less than reasonably equivalent value" in exchange for the transfer. "Reasonably equivalent value" is a question of fact as to which the court is to be given considerable latitude to make a determination by considering all the facts and circumstances surrounding the transaction in question. In re Summit Place, LLC, 298 B.R. 62, 70 (Bankr.W.D.N.C. 2002) (citing In re Bennett Funding Grp., Inc., 220 B.R. 743, 769 (Bankr. N.D.N.Y. 1997)). In the case of Ponzi schemes, the general rule is that a defrauded investor gives "value" to Debtor in exchange for a return of the principal amount of the investment, but not as to any payments in excess of principal. Perkins v. Haines, 661 F.3d 623, 627 (11th Cir. 2011); Donell v. Kowell, 533 F.3d 762, 770 (9th Cir. 2008); Scholes v. Lehmann, 56 F.3d 750, 757–58 (7th Cir. 1995). As the Eleventh Circuit has explained:

> Courts have recognized that defrauded investors have a claim for fraud against the debtor arising as of the time of the initial investment. Thus, any transfer up to the amount of the principal investment satisfies the investors' fraud claim (an antecedent debt) and is made for "value" in the form of the investor's surrender of his or her tort claim. Such payments are not subject to recovery by the debtor's trustee. Any transfers over and above the amount of the principal— i.e., for fictitious profits—are not made for "value" because they exceed the scope of the investors' fraud claim and may be subject to recovery by a plan trustee.

Perkins, 661 F.3d at 627 (internal citations omitted).

The Court declines to distinguish between payments to Defendant designated by Debtor as "interest" or "income" from a repayment of principal. This approach is consistent with that taken by

other courts who have considered the issue. In <u>Perkins</u>, the Eleventh Circuit rejected the Trustee's argument that equity should be distinguished from debt, reasoning that focusing solely on the form of the investment would "ignore the realities of how Ponzi schemes operate." 661 F.3d at 628. Similarly, the Ninth Circuit has rejected any attempts to distinguish between the forms of the defendants' investment. <u>AFI Holdings</u>, 525 F.3d at 708 ("[W]e delve beyond the 'form' to the 'substance' of the transaction."). Therefore, regardless of whether payments are characterized as repayment of principal or payment of interest, such payments are made for "value" so long as they do not exceed the amount of a defendant's fraud claim. However, in this proceeding, Plaintiff's complaint establishes that the amount Defendant received in transfers from Debtor exceeded Defendant's principal investment. Although the transfers up to the amount of Defendant's principal investment satisfy Defendant's fraud claim and are made for value, any transfer in excess of Defendant's principal is not made for value because it exceeds the scope of Defendant's fraud claim. Such profits may therefore be subject to recovery by Plaintiff under section 548(a)(1)(B) or North Carolina law. Because Plaintiff has stated facts sufficient to "state a claim to relief that is plausible on its face," namely facts tending to show that some portion of transfers made to Defendant by Debtor were not for value, dismissal of Count II is not appropriate. <u>Twombly</u>, 550 U.S. at 570.

4.     Motion to dismiss the Objection is denied

An objection to proof of claim which contains no facts to support disallowance may be dismissed under Rule 12(b)(6). <u>In re Barnhart</u>, 2010 WL 724703, at *3 (Bankr. N.D. W.Va. Feb. 26, 2010). Plaintiff alleges that the claim should be denied "in full" or "reduced by the amount of interest paid to Defendant." Complaint, 11. Plaintiff has alleged sufficient facts to plausibly show that the estate is entitled to the disallowance or reduction of Defendant's proof of claim based on its claims

for actual and constructive fraud under both the Bankruptcy Code and North Carolina law. Defendant's Motion is therefore denied as to the Objection to Defendant's Proof of Claim.

CONCLUSION

Defendant's Motion to Dismiss is denied. An order so providing is being entered contemporaneously with the filing of this memorandum opinion.

This 19th day of January, 2012.

WILLIAM L. STOCKS
United States Bankruptcy Judge

## PARTIES TO BE SERVED

Charles M. Ivey, IV
Edward R. Gatton, Esq.
Ivey, McClellan, Gatton & Talcott, LLP
P.O. Box 3324
Greensboro, NC 27402

Michael D. West, Esq.
Bankruptcy Administrator
P.O. Box 1828
Greensboro, NC 27402

Sarah F. Sparrow, Esq.
Jeffrey S. Southerland, Esq.
Tuggle Duggins & Meschan, P.A.
Post Office Box 2888
Greensboro, NC 27402